# MATTHEW FLAMM

ATTORNEY AND COUNSELLOR AT LAW

26 COURT STREET, SUITE 600

BROOKLYN, NEW YORK 11242

matthewflamm@msn.com

(718) 797-3117     FAX (718) 522-2026

<u>By ECF</u>

October 8, 2013

The Honorable Frederic Block
United States District Court
225 Cadman Plaza East
Brooklyn, New York

Re:   <u>Alicea Diaz v. New York City Transit Authority and Jacqueline Benjamin</u>
      11 CV 3728 (FB)

Your Honor:

    This office represents Plaintiff Alicea Diaz in this civil rights action under 42 U.S.C. §1983 alleging that Jacqueline Benjamin, a Transit Bus Operator, assaulted Ms. Diaz and caused Plaintiff's arrest and prosecution. This suit grows out of a December 2010 encounter between Alicea Diaz, a waitress on her way to work, and Ms. Benjamin, a bus operator who reacted poorly to Plaintiff's criticism of Ms. Benjamin's treatment of a wheelchair bound passenger. <u>See</u> Def. Exh. D: Transcript of Plaintiff's June 13, 2012 Deposition at 89-90, 102-106, 122, 129-130.

    Defendants' letter motion seeks summary judgment solely on the issue of that Defendant Benjamin was not acting under color of law. Although there can be little dispute that Ms. Benjamin was acting within her capacity as a Transit employee when she misconducted, Plaintiff does not believe that she can meet her burden at trial that Defendant Benjamin was acting under color of law, that is, that her act of assault and causing Ms. Diaz's arrest and prosecution have a sufficient relationship to the performance of the actor's official duties and were made possible because of her authority as a Transit bus operator.

    Plaintiff concedes so much of Defendants' letter motion seeking summary judgment as contends that Defendant Benjamin was not acting under color of law.

<u>Conflict of Interest Hearing</u>

    Before ruling on Defendants' motion, however, Plaintiff respectfully requests that the Court hold a conflict of interest hearing pursuant to <u>Dunton v. County of Suffolk</u>, 729 F.2d 903

The Honorable Frederic Block
October 8, 2013
Page 2

(2nd 1984) on such date as is convenient to the Court./[1] Defense counsel's arguments regarding color of law and scope of employment run directly into the arms of the fatal conflict identified in Dunton: that the individual Defendant, Jacqueline Benjamin, was not acting within the scope of her employment and was not acting under color of law when she assaulted and caused Ms. Diaz's arrest and prosecution. Cf. Defendants' March 27, 2013 Letter Motion ("Def. Memo") at p.5 ("Benjamin ... [was acting as] a private citizen, not related to her official and customary duties as a bus operator."; "It is clear that Benjamin's alleged acts were personal in nature.") with Dunton v. County of Suffolk, 729 F.2d at 906 (Defendant Suffolk County Police Officer "acted as a husband, not even as an officer"; "acting as an irate husband, not really as an officer"); see also Ray v. Long Island Railroad, 221 A.D.2d 613, 615 (2d Dep't 1995)(Affirming dismissal of *respondeat superior* and §1983 claim [*respondeat* does not apply where "tort committed solely for personal motives of the employee unrelated to furtherance of the employer's business."])

It is unlikely that Defendant Benjamin is even aware that her Transit Authority attorneys claim that she was acting purely privately and outside the scope of her employment and that they seek to shift liability to her as an individual, not as a Transit employee. Defendant Benjamin's encounter with Alicea Diaz was not a wholly personal dispute unrelated to her job as a Bus Operator, and it appears that separate counsel should be had if Defendant Transit Authority does not forgo this defense. Plaintiff does not believe it is waivable. Plaintiff respectfully requests a conflict hearing prior to resolving Defendants' summary judgment motion.

Claims For Relief and Effect of Dismissal of the Federal Claims

The Complaint (Docket 1) alleges claims for relief based on the arrest (Complaint at ¶¶ 22-27 [Federal and State Constitutions]), the assault (Id. at ¶¶ 28-33 [Federal and State Constitutions]) and malicious prosecution (Id. at ¶¶ 34-37 [Federal Constitution]). The sixth claim for relief for common law negligence (Id. at ¶¶ 38-41) need not be considered as Plaintiff agrees to discontinue with prejudice that pendent claim. Defendants' Answer, Def. Exh. B, denies that Defendant Benjamin was acting within the scope of her employment or under color of law but admits that she was employed by Transit. See Answer at ¶¶ 10-11.

To clarify Defendants' recitation of what claims are against whom, Def. Memo at p. 1, the pendent state constitutional claims based on the assault, battery and arrest are against the Transit Authority vicariously, based on Defendant Benjamin's acts performed within the scope of her employment, and the federal claims for force, arrest, and prosecution are against Defendant Benjamin for her actions taken under color of law.

---

1. This motion is related to the defense motion for summary judgment in Marcus Angelet v. New York City Transit Authority, Et Ano, 11 CV 1492 (FB) now pending before Your Honor. Counsel are identical and defense raised the same single issue of color of law. Plaintiff suggests that any appearances in this matter coincide with Angelet.

The Honorable Frederic Block
October 8, 2013
Page 3

     Subject to the requested <u>Dunton</u> hearing and if this Court dismisses the federal claims, Plaintiff respectfully requests that the Court decline pendent jurisdiction and allow the claims under New York law to proceed in State court.

     Finally, because Plaintiff is conceding the color of law argument and asking that the case go to State court, Plaintiff does not set out a counter statement of facts or supplement Defendants' heavily excerpted transcripts. Plaintiff notes, however, that defense makes much of the assertion that Police Officer Eric Smith conducted some sort of an independent investigation, Def. Memo at p. 2, which is flatly contradicted by Transit Authority Bus Operator Illair Massoineuvre. Exh. 1: Excerpt of October 26, 2012 Deposition Transcript at p.41 ("A: The first thing, when the cop come on the bus, I said 'The driver got beat by this lady." They just – . Q: The police immediately handcuffed her? A. Yeah.").

                                        Respectfully submitted,

                                        Matthew Flamm

cc:    Michael Rabinowitz
        By ECF

# EXHIBIT 1

1

# ORIGINAL

```
 1
 2   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 3   ------------------------------------------X
     ALICEA DIAZ,
 4
                                    PLAINTIFF,
 5
                -against-          Case No.:
 6                                 11 CV 03728

 7
     THE NEW YORK CITY TRANSIT AUTHORITY and
 8   JACQUELINE BENJAMIN, an employee of the
     Transit,
 9
                                    DEFENDANTS.
10   ------------------------------------------X

11                    DATE:  October 26, 2012

12                    TIME:  11:04 a.m.

13

14

15

16           DEPOSITION of the Defendant,

17   THE NEW YORK CITY TRANSIT AUTHORITY, by a

18   Witness, ILLAIR MAISONNEUVRE, taken by the

19   Plaintiff, pursuant to a Subpoena and to

20   the Federal Rules of Civil Procedure, held

21   at the offices of Wallace D. Gossett, Esq.,

22   130 Livingston Street, Brooklyn, New York

23   11201, before Chaya Vogel, a Notary Public

24   of the State of New York.

25
```

```
 1                I. MAISONNEUVRE
 2   into the bus?
 3       A.    I can't even remember that.
 4       Q.    Where, along this series of
 5   events, did you see Ms. Diaz in handcuffs?
 6             You've already said you saw her
 7   handcuffed in the bus, not on the street,
 8   correct?
 9       A.    The first thing, when the cop
10   come on the bus, I said, "The driver got
11   beat by this lady."  They just --
12       Q.    The police immediately
13   handcuffed her?
14       A.    Yeah.
15       Q.    What, if anything, did Ms. Diaz
16   say or do right before the police
17   handcuffed her, if anything?
18       A.    "The lady beat me up."
19       Q.    That's what she said?
20       A.    Yeah.
21       Q.    What, if anything, did she say
22   or do after they put the handcuffs on her
23   and before you walked off the bus?
24             Did she do anything different?
25       A.    The driver?
```

42

```
 1                  I. MAISONNEUVRE
 2          Q.     The passenger, who you said was
 3   handcuffed and was saying "Hey, she beat me
 4   up.  The bus operator beat me up."
 5                 After she was handcuffed, what,
 6   if anything, did she say or do?
 7          A.     She said something, but I don't
 8   recall it.
 9          Q.     Then you stepped off the bus
10   and you got back in your bus without
11   looking back into the other bus?
12          A.     If I look back, I can't even
13   remember if I see something or not see
14   something.  But I just -- you know.  Most
15   of the time, we look back, we don't recall.
16          Q.     Understood.
17                 You looked back and you might
18   have seen something, you don't remember, or
19   you looked back and you did not really seen
20   anything; that's fair to say?
21          A.     Yes.
22          Q.     Then you drove off and thought
23   nothing of this until you were sitting in
24   this room, correct?
25          A.     Yes.
```

42